O. H. DENMAN v. RORERT A. STUART.

No. 8163. Decided January 12, 1944.
(176 S. W., 2d Series, 730.)

*Thompson, Walker, Smith & Shannon, Aubrey Alexander B. K. Goree,* and *Luther Hudson,* all of Fort Worth, for petitioner.

The Court of Civil Appeals erred in reversing and remanding this case on the ground that the trial court applied an erroneous measure of damage, because the appellant contended for an entirely different measure of damage from that approved by the Court of Civil Appeals, did not object to the charge, and has never raised the point on which the case was reversed. Douglas v. Douglas, 167 S. W. (2d) 774; Schkade v. Independent-Eastern Torpedo Co., 168 S. W. (2d) 281; 43 Tex. Jur. 613, sec. 360.

*R. V. Nichols,* for Fort Worth, for respondent.

It was not error for the Court of Civil Appeals to render the judgment which it did, because respondent contended for the proper measure of damages in the trial court and in the Court of Civil Appeals. Gillespie v. Gray, 214 S. W. 730; Mason v. Peterson, 250 S. W. 142; Payton v. City of Big Spring, 157 S. W. (2d) 975.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

Petitioner, O. H. Denman, sued respondent, Robert A. Stuart, alleging that they had made a contract whereby Denman was to deed Stuart 326 acres of land in Tarrant County in return for a deed from Stuart to Denman of 1,600 acres in Bosque County. Denman alleged that his land was valued in the trade at $65.00 per acre while Stuart's was appraised at $15.00 per acre, a balance being struck by Denman assuming a lien outstanding against Stuart's land and taking some goats from Stuart at $3.33 1/3 per head; that before the exchange was consummated, the Tarrant County land was surveyed and found to have a shortage of 8 27/40 acres, which was adjusted on a valuation of $65.00 per acre; that thereafter, on or about November 30, 1937, the trade was closed with Stuart conveying to Denman what they supposed to be 1,600 acres of land, at $15.00 per

acres, that both parties believed that the tract contained 1,600 acres, but that in 1941 Denman ascertained that he and Stuart were mutually mistaken, in that, instead of containing 1,600 acres as they had figured and believed it did, the tract consisted of only 1,500.9 acres; that by reason of this mutual mistake, Stuart had been enriched $1,486.50, the same being 99.1 acres shortage at $15.00 per acre, which was the agreed price as well as well as the reasonable market value. He sought recovery of that amount.

Besides a general denial, Stuart pleaded (1) limitation of four years, in that, if there was a shortage, Denman could have discovered it at the time of the exchange by the use of ordinary care; and (2) that the exchange was in gross and not on a valuation per acre.

The jury found that the exchange was on an acreage basis at $15.00 per acre for the land Stuart deeded Denman; that the Bosque County tract consisted of 1500.4 acres; and that, in the exercise of ordinary care, Denman could not have discovered the shortage prior to October 11, 1937, or prior to October 11, 1939, or before November 30, 1937.

Upon that verdict the trial court rendered judgment for Denman for $1,494.00, that is, for 99.6 acres of land at $15.00 per acre.

Stuart appealed, and the Court of Civil Appeals reversed and remanded the cause on the theory that the trial court applied the wrong measure of damages. 172 S. W. (2d), 164.

Denman's application for writ of error was granted on the point that "The Court of Civil Appeals erred in rendering and remanding this case on the ground that the trial court applied erroneous measure of damages, because the appellant contended for an entirely different measure of damages from that approved by the Court of Civil Appeals, did not object to the charge, and has never raised the point on which the case was reversed."

It was announced in George v. Hesse, 100 Texas, 44, 93 S. W., 107, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, 8 L. R. A. N. S. 804, that the measure of damages for fraud in the exchange of properties, real or personal, is the difference, at the time of the exchange, between the value of the property given and the value of that received. Then, in 1919, came the enactment of Art. 4004, R. S. 1925, providing that actual damages for actionable fraud in transactions in real estate shall be "the

difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract." This Court has said in one case that the rule announced in George v. Hesse, supra, "has been supplemented, if not superseded, by the above statutory rule." Sibley v. Southerland Life Ins. Co., 36 S. W. (2d) 145. And in Reed v. Hester (Com. App.), 44 S. W. (2d) 1107, where Judge Sharp applied the statutory rule, his holding was expressly approved by the Supreme Court.

However, Art. 4004 does not apply to this case because mutual mistake precludes the existence of fraud as defined by the statute. Moss-Tate Inv. Co. v. Owens (Civ. App.), 22 S. W. (2d) 1096 (er. ref.).

In Cox v. Barton (Com. App.), 212 S. W., 652, 653, in which the holding was expressly approved by the Supreme Court, it is said that where there is an exchange of lands *in gross* and there is a mutual mistake as to the acreage received by one of the parties, there is much stronger reason for applying the rule announced in George v. Hesse than in cases of fraud.

But we are here concerned with an exchange made on an agreed price *per acre,* and we think the correct measure of damages was announced in Moss-Tate Inv. Co. v. Owens, supra. There the plaintiff gave the defendant cash and other real estate in exchange for a triangular city lot. Both parties supposed that the lot was 300 feet long by its arc line and valued it in the trade on that dimension at $50.00 per foot. Later it was discovered that this line was 63.6 feet shorter than the parties thought it was, and the plaintiff was allowed recovery at $50.00 per foot for the shortage of 63.6 feet. Surely there can be no fairer, more equitable valuation placed on acreage which the parties to an exchange believe, in good faith, that one of them is getting but which, because of mutual mistake, he does not get, than that which they themselves fix in negotiating and consummating the trade. It is true that in Moss-Tate Inv. Co. v., Owens, supra, there is no suggestion that there were any improvements on the lot, whereas in this case the 1500.4 acres actually received by Denman in the exchange was improved to the extent of two dwelling houses, necessary outhouses and a water well, which fact was the basis of the reversal of the trial court judgment by the Court judgment by the Court of Civil Appeals. However, to hold that the existence of improvements should render the rule announced in that case inapplicable here

would be wholly to ignore the fact that these improvements were on the land at the time of the exchange and the fact that their value must have been considered by Denman and Stuart in fixing the valuation of the Bosque County ranch by the acre. And, with these improvements and their value in mind they fixed the value of the ranch at $15.00 *per acre* in the belief that it contained *1600* acres. In other words, they spread the value of the improvements out over 1600 acres and determined that the value of each such acre was $15.00. Therefore, when it later developed that the tract, contained only 1500.4 acres, who can complain if the courts say that the missing 99.6 acres was worth $15.00 per acre when Denman and Stuart, making an exchange in perfect good faith and without any thought that this litigation would arise, agreed that such was its value? In this connection it is significant that when it was discovered, before the trade was closed, that Denman's Tarrant County land, an improved farm, consisted of only 317 13/40 acres rather than 326, as the parties thought when they entered into the exchange contract, the shortage was adjusted on basis of '$65.00 per acre in Stuart's favor. That is exactly the measure of reimbursement now invoked in Denman's favor for the shortage in the Bosque County ranch. We are content to adopt the appraisement which the parties made when they entered into the contract, as they thereafter constructed and reaffirmed it in making the adjustment on the shortage in the Tarrant County land. It is a matter of contract, as to which they must be held to have bound themselves. Certainly neither Stuart nor Denman can now say that their own yardstick, once already used by them, is not both exact and dependable. We approve the measure of damages applied by the trial court.

This conclusion renders it unnecessary to decide whether Stuart properly raised the question in the courts below.

We approve the holdings of the Court of Civil Appeals on the other questions raised there by Stuart.

We observe, however, that Denman's judgment is for $1,494.00, which comes from the fact that the jury found that the shortage was 99.6 acres. Denman specially pleaded a shortage of 99.1 acres and asked recovery of only $1,486.50. It was error to give him more than he asked for. 25 Tex. Jur., Judgments, sec. 117. Therefore, the trial court's judgment is reformed to award Denman recovery of $1,486.50 rather than $1,494.00. Otherwise, it is affirmed. In view of the smallness of this item and the fact that it undoubtedly would have been corrected had the matter been called to the attention of either

court below, our action with respect to it will be given no effect in adjudging costs.

The judgment of this Court of Civil Appeals is reversed. The judgment of the trial court is reformed as above stated and, as reformed, is affirmed.

Opinion adopted by the Supreme Court January 12, 1944.