**MISSOURI PACIFIC RAILROAD CO.,**
Appellant,

v.

**The STATE of Texas et al., Appellees.**

**No. 511.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 21, 1971.

Rehearing Denied Aug. 11, 1971.

Ben G. Sewell, William A. Paddock; Sewell, Junell & Riggs, Houston, for appellant.

Joe Resweber, Charles J. Wilson, Houston, for appellees.

TUNKS, Chief Justice.

This is a condemnation case. The condemnee's land, before the taking here in question, was an unimproved tract of about 550 acres in a roughly square shape. (This and other acreage figures have been rounded.) The only access to it was by a dedicated but unimproved city street called Mowery Road extending west from about the middle of the western boundary of the tract. The land taken by the State consisted of 40 acres and was for the purpose of constructing, as a limited access freeway, State Highway 288, commonly called the South Freeway. It is a strip about 500 feet wide and it crossed the condemnee's tract from north to south cutting the remainder into 2 tracts.

Condemnee's land remaining after the taking consisted of a 340 acre tract lying to the west of the highway and a 170 acre tract to the east. Both of the remaining tracts were denied direct access to that portion of the highway abutting them by the language of the statement in condemnation. After the taking the west remainder had the same access that it had before the taking—by way of Mowery Road. The east remainder was, by the taking, which severed the land from north to south, cut off from access by way of Mowery Road. However, the plans and specifications of the State relating to Highway 288 showed roads which afford the east remainder access at its northwest and southwest corners, as hereinafter more fully explained.

The condemnee did not claim any damage to that portion of the remaining land lying west of the highway and no special issue was submitted on that subject. The controversy with which this appeal is concerned is the claimed damage to that portion of the remaining land which lies to the east of the highway. The jury, in response to the usual special issues, found that there was no damage to such east remainder, and the trial court, accordingly, rendered judgment for condemnee for that sum found by the jury to represent the value of the land taken. The condemnee has appealed.

By the condemnation that portion of the remaining land lying east of the highway (hereinafter called the east remainder) was denied direct access to that portion of the main highway abutting its western boundary. This denial of access was authorized by Art. 6674w–1, Vernon's Ann.Tex.Civ.St. Obviously, too, the highway cut off the east remainder from that access which it had before the taking—by way of Mowery Road. It is the position of the appellant that this left its east remainder "landlocked" and that it was upon such basis that the jury should have determined the damage to such remainder. It is the State's position that the east remainder was not landlocked, but rather, after the construction of the highway it, the east remainder, will have access to a public street at both its northwest and its southwest corners. The appellant counters with the contention that these

points of access which the State says it will have are dependent on merely "promissory" representations of the State so that they should not have been shown by the evidence nor considered by the jury in determining the questions as to damage to the east remainder. The condemnee established its position in the trial court by exceptions to the pleadings, by a motion in limine, by objections to evidence, by objections to the charge and by request for special instructions to the jury. In all of such particulars the condemnee was overruled by the trial court and those rulings are subjects of points of error on this appeal.

Highway 288, in accordance with the plans and specifications on the basis of which this condemnation was authorized, is to be a freeway for high speed traffic. It is to have 4 lanes each for south bound traffic and north bound traffic. Access to it is limited to points at which it intersects or crosses over other public thoroughfares. It is not to have beside it a frontage road continuing throughout its length and to which frontage road abutting properties would have access and which would, in turn, lead to points of access to the main highway. The plans do, however, provide for the construction, adjacent to the main highway at some of the places along its length, of roads leading to a point of access onto the main highway from tracts of property abutting the main highway and which would, except for such adjacent roads, be deprived of any access at all. Such were the provisions made in the State's plan for access to condemnee's east remainder.

The evidence shows that the City of Houston proposes to build certain streets, which will intersect Highway 288, near the subject property. One of such proposed city streets is Airport Boulevard which will run east and west at a distance of about 1500 feet from the north line of the east remainder. Another is Orem Drive which will run east and west at a distance of about 500 feet from the south line of the east remainder. The State's plans for Highway 288 provide for overpasses to be constructed on Highway 288 where it crosses the points at which those two proposed city streets will be located. Such plans also provide that the State will construct that portion of the two proposed city streets lying within the right-of-way of Highway 288 at the time of and as a part of the State's construction of Highway 288. There will be entrance and exit ramps onto and from the highway at Airline Boulevard and Orem Drive. Those entrance and exits will not be dependent on nor await the City's construction of its streets but will be built at the time of the construction of Highway 288.

The access to condemnee's east remainder is to be afforded by a road extending from the northwest corner of such tract to Airport Boulevard and from its southwest corner to Orem Drive. The State's plans provide that these access roads are to be two way roads with one lane for traffic in each direction. At the time of the trial the State had already acquired a 60 foot strip of land adjacent to the east side of its right-of-way for the main Highway 288 for the construction of those two access roads. They are to be constructed at the same time as the main highway and under the same contract.

Appellant's contention that access to its east remainder is dependent on 'promissory' statements of the condemnor is untenable. The authorities cited in support of that contention are distinguishable. In Willcockson v. Colorado River Municipal Water District, Tex.Civ.App., 436 S.W.2d 203, n. r. e., land upon which there were producing oil and gas wells was taken for a water supply reservoir. In its petition the condemnor recited that it "will" provide earthen mounds around the oil and gas wells, and "will" construct dikes and roads to those wells "where, in its opinion, such procedures are feasible." It recited that it "will" provide a barge and operator for the land owner's access to the wells. It recited that "Petitioner will,

if, as and when the need arises" grant the land owner permits for exploration and further drilling on the land taken. The court correctly held that those recitations were promissory only and not properly to be considered in determining the damage to the land owner's remaining property. Those items did not constitute a part of the public utility to be established upon the property taken.

In White v. Natural Gas Pipeline Co. of America (Tex.Sup.Ct.) 444 S.W.2d 298, property was condemned for a pipeline right-of-way. The statement in condemnation recited that the land owner could continue to farm upon and irrigate across the land taken and that condemnor would from time to time remain liable for damages to crops resulting from the construction and operation of the pipeline. The Court held such recitation to be "mere promissory statements or declarations of future intentions" by the condemnor and were properly stricken from the pleading. The specific language used in the statement in condemnation does not appear in either the Supreme Court opinion nor in that of the Court of Civil Appeals. (Natural Gas Pipeline Co. of America v. White, 436 S.W.2d 944.) The language appears to have been construed, however, as not imposing a limitation of the estate taken by the condemnor but, as noted, as being merely promissory in character. Other cases cited by appellant are of the same general nature.

The most significant feature of this case which distinguishes it from those cited by appellant is in the fact that as to the acquisition of the land for the access roads the condemnor's representations are not as to something to be done in the future. At the time of the trial those rights-of-way had already been acquired by the State. Their acquisition was not something to be done in the future. Of course the access roads had not been built, but neither had Mowery Road, the only access the appellant had to and from

its property before the condemnation. Furthermore, the access roads were to be constructed at the same time and under the same contract when the principal construction was made for Highway 288.

The 60 feet wide ends of those rights-of-way abutted appellant's east remainder. The appellant thereby acquired a legally recognized easement appurtenant to its property. If the State were to take that easement appurtenant from appellant by the abandonment of the right-of-way or by diverting them to another purpose, appellant would be entitled to compensation therefor. City of Beaumont v. Marks (Tex.Sup.Ct.) 443 S.W.2d 253.

Another distinction exists in that in the cases cited by appellant as examples of promissory statements the representations by the condemnor related to matters to be done in the future which were not integral parts of the public facility for which the property was condemned. The State may not take private property by condemnation except for public use. Maher v. Lasater, 163 Tex. 356, 354 S.W.2d 923. As a part of this preceding in eminent domain the State was required to file a statement in writing with the county judge showing, among other things, the purpose (public) for which the land is to be used. Art. 3264(1) V.A.T.S. This statement in this case showed that the land is to be used for the construction of State Highway 288 which "when constructed, will become an integral part of the State Highway System of the State of Texas". The evidence showed that the plans and specifications for that "integral part" of the state highway system included the access roads in question. As Highway 288 was an integral part of the state highway system so the access roads were an integral part of Highway 288. On the other hand, the earthern mounds, the barge, the roadways on the dikes and the permits for future drilling and exploration were not integral parts of the water reservoir which was the public purpose for which the

eminent domain proceeding was had in the Willcockson case referred to above.

Where, as here, a part of a tract of land is taken by eminent domain the jury must determine the damage to the remainder "taking into consideration the nature of the improvement, and the use to which the land taken is to be put". State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 197. In this case the "nature of the improvement" was as a multi-lane, high speed freeway extending from Houston to Angleton. It would be illogical to say that the jury should be confined to a consideration of the improvement as if the highway began at the north line and ended at the south line of appellant's property. It was proper that the jury consider the improvement in its entirety including its character as a limited access highway, with access provided for those tracts, including appellant's, abutting it that would otherwise be cut off from access to any public thoroughfare.

The trial court did not err in permitting the pleading of, the evidence of and the jury's consideration of the fact that the State's plans and specifications included the access roads to appellant's property.

The trial court's judgment included the following language:

"Access to and from the remaining property abutting the proposed highway facility will be permitted to the East remainder between a point North 86° 52′ 45″ East, a distance of 60.00 feet from the beginning of the seventh call *and the beginning of the seventh call,* also from the beginning of the eleventh call and the end of the twelfth call of the foregoing property description." (Emphasis added.)

The quoted language is admittedly ambiguous and the inclusion of the underlined words was a typographical error. A point of error of appellant is directed to such ambiguity. In the trial court the condemnee's amended motion for new trial included an assignment of error as to such ambiguity, but in doing so misquoted the portion of the judgment relating to access and failed to point out the basis for the ambiguity. However, the appellees have conceded the ambiguity and have agreed that it may be eliminated. The trial court's judgment is reformed so that the quoted paragraph is stricken and there is substituted therefor the following language:

"Access to and from the remaining property of the condemnee abutting the east side of the proposed highway facility is provided at the west 60 feet of the north line of such east remainder, such 60 feet being the south end of an access road right-of-way called for in the plans and specifications of such facility and acquired by the State, and at the west 60 feet of the South line of east remainder, such 60 feet being the north end of an access road right-of-way called for in such plans and specifications and acquired by the State."

■ Since the ambiguity was not properly called to the attention of the trial court, and probably would have been corrected, if it had been, this reformation of the trial court's judgment will not be given consideration in taxing costs. Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730; Rule 448 Texas Rules of Civil Procedure.

Costs of appeal are, therefore, taxed against appellant.

As reformed the judgment of the trial court is affirmed.